■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JACK E. KELLER, Appellant. [667 NYS2d 814] —Carpinello, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered July 15, 1996, upon a verdict convicting defendant of the crime of murder in the second degree.

In the early morning hours of August 27, 1995, defendant led the brutal riverside murder of Michael Murray in the City of Binghamton, Broome County, the motive being defendant's belief that Murray was homosexual. Along with codefendants Jay W. Fink and Walter C. Hagadorn, defendant beat Murray until he was unconscious; then defendant alone stabbed Murray in his neck, chest and abdomen 25 times with a screwdriver. Finally, the men dragged Murray, still breathing, into the river. Convicted of murder in the second degree and sentenced to 25 years to life in prison, defendant appeals.

We affirm. Of the numerous points advanced in defendant's main brief and *pro se* supplemental brief, only a few merit discussion. In arguing that the evidence at trial was insufficient to convict him of murder in the second degree, defendant first claims that he was too intoxicated to form the requisite intent to commit the crime and that the jury should have given "more weight" to this defense. As an apparent alternative argument, defendant next contends that he did not kill Murray, rather, either Hagadorn or Fink actually committed that crime.

The jury did hear testimony that defendant was an alcoholic, had consumed a fair amount of alcohol the night before and

morning of the murder and appeared to be intoxicated. The jury was instructed that evidence of defendant's intoxication may negate an element of the crime charged. Given its verdict, however, it obviously rejected this defense, as was its province (*see, People v Gagliardi*, 232 AD2d 879, 880). Whether an individual's level of intoxication negates the element of intent to commit a crime lies within the domain of the jury as the trier of fact (*see, id.*, at 880; *People v Dorst*, 194 AD2d 622, *lv denied* 82 NY2d 924).

Hagadorn testified that shortly before the four men proceeded to the river bank, defendant told him that "he was going to kill [Murray]" and when they arrived at their destination, defendant directed Hagadorn and Fink to "[g]rab a stick or rock" to beat Murray. The three men then punched and kicked Murray until he was unconscious, at which point defendant ran back to Murray's car and retrieved a screwdriver. According to Hagadorn, defendant stated, "He can identify us. We got to get rid of him. * * * [W]e've got to kill him," and proceeded to stab Murray in the throat and chest. Hagadorn further testified that Murray was "still gurgling on his own blood" and was then dragged into the river, after which they all fled in Murray's car.

In addition to Hagadorn's testimony, defendant's stepdaughter testified that shortly before the murder she heard defendant say to Fink, "Why don't we do something to [Murray], you know, go out and kill him?" Moreover, medical testimony disclosed that Murray was stabbed 25 times with a weapon consistent with that of a flat-headed screwdriver (*see, People v Angel*, 185 AD2d 356, *lv denied* 80 NY2d 1025, 81 NY2d 1069) and that his cause of death was multiple traumatic injuries which produced unconsciousness and exsanguination (bleeding to death), as well as drowning. The jury was also read defendant's signed, written statement to police in which he admitted that he wanted to, and did, beat up Murray that morning but denied stabbing him (defendant claimed that Hagadorn did the actual stabbing). In his statement, defendant admitted that he helped drag Murray's unconscious body into the river and that "he didn't believe that in the condition [Murray] was in, after they dragged him into the river * * * he could come back out on his own". Viewing the evidence in the light most favorable to the prosecution (*see, People v Contes*, 60 NY2d 620, 621), we are satisfied that it was legally sufficient to establish beyond a reasonable doubt that defendant acted with intent to kill Murray, despite his consumption of alcohol (*see, People v Angel, supra*). Moreover, upon the exercise of our

factual review power, we are satisfied that the jury's verdict is not against the weight of the evidence (*see*, CPL 470.15 [5]).

Next, we reject defendant's contention that County Court erred in permitting the People to cross-examine him about prior criminal convictions, including the facts underlying them, should he elect to take the stand. A defendant who chooses to testify may be cross-examined concerning prior criminal acts that bear logically on his or her credibility as a witness (*see*, *People v Sandoval*, 34 NY2d 371, 374). Use of prior criminal convictions to impeach a defendant is a matter of discretion which rests largely with the trial court (*see*, *People v Chaney*, 163 AD2d 617, 618, *lv denied* 76 NY2d 892). In our view, County Court properly weighed the probative value and prejudicial effect of permitting defendant to be cross-examined about a July 1985 conviction for attempted burglary in the second degree and an October 1988 conviction for robbery in the first degree.

The 1985 conviction was objected to by defense counsel as being too remote. Although it was over 10 years old at the time of trial, County Court, in ruling that the People could cross-examine defendant about it, properly took into consideration the fact that defendant was incarcerated for over six years following his conviction for the crime (*see*, *People v Teen*, 200 AD2d 785, 786, *lv denied* 83 NY2d 859). Thus, we discern no abuse of discretion on remoteness grounds in permitting the inquiry. Questioning defendant as to the underlying facts of his 1988 robbery conviction (defendant picked up a hitchhiker, demanded money from him and stabbed him in the leg with a knife when same was not produced) was also not an abuse of discretion. This theft-related crime was not so similar to the facts which formed the basis of the charges at trial as to be overly prejudicial and its commission was relevant to defendant's credibility, demonstrating his willingness to place his own interests above those of society (*see*, *People v Lebron*, 213 AD2d 678, *lv denied* 85 NY2d 975; *People v Scott*, 118 AD2d 881, *lv denied* 67 NY2d 1056).

Nor are we persuaded by defendant's *pro se* argument that he was denied effective assistance of counsel. Defense counsel, having earnestly advanced the defense theories that Hagadorn stabbed Murray, that Murray was already dead when defendant assisted in dragging him into the river and that defendant's intoxication negated his intent to commit any crime, provided meaningful representation upon our review of the record (*see*, *People v Baldi*, 54 NY2d 137, 147). Finally, given the brutality of Murray's senseless murder and defendant's as-

sorted history of criminal activity which dates back to 1969, we are hardly persuaded that defendant's sentence was harsh and excessive.

Defendant's additional contentions have been considered and found to be either unpreserved for appellate review or totally lacking in merit.

Cardona, P. J., White, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.